# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | | |
|---|---|---|
| **RODERICK SOMERSET,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:17CV00016 |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| **SPARTANNASH ASSOCIATES, LLC,** | ) | By: James P. Jones |
| | ) | United States District Judge |
| Defendant. | ) | |

*Dirk McClanahan and Zach Miller, McClanahan Powers, PLLC, Vienna, Virginia, for Plaintiff; Kevin L. Newsome and Rachael L. Loughlin, O'Hagan Meyer, PLLC, Richmond, Virginia, for Defendant.*

In this Title VII employment discrimination case, the plaintiff, a truck driver, claims that his former employer fired him because of his race and in retaliation for complaining about job discrimination. Following discovery, the employer has moved for summary judgment in its favor, and for the reasons set forth in this opinion, the motion will be granted.

I.

The following facts are taken from the summary judgment record.

Roderick Somerset, an African American, worked as a truck driver for the defendant, SpartanNash Associates, LLC ("SpartanNash"), beginning in April 2012. His employment was terminated in October 2015.

Somerset worked out of SpartanNash's Bluefield, Virginia, Distribution Center ("SpartanNash Bluefield") and reported to Angela Bevins. Both Bevins and Operations Manager Brandon Hoops, investigated and addressed any customer complaints, coached employees on unsatisfactory work performance, and issued disciplinary sanctions.

Dollar General, the operator of numerous retail stores, was a significant customer of SpartanNash and the only customer served out of SpartanNash Bluefield during Somerset's employment.

SpartanNash asserts that it is a customer-driven company. Its commitment to and emphasis on customer satisfaction and service is detailed in its Associate Handbook and Code of Business Conduct. One of the company's core values is "Customer Focus." Def.'s Mem. Supp. Mot. Summ. J. Ex. E, Schwartz Decl. Ex. 1 at 5, ECF No. 19-5. The Associate Handbook provides that "SpartanNash is committed to differentiating ourselves from our competitors through focus on the <u>customer</u>. . . . At SpartanNash, it's about providing customer service a notch above the rest. How we treat our customers (both internal and external) is how we set ourselves apart as a great company to work for and do business with." *Id*. at 11. A "[v]iolation of any provision of the SpartanNash Code of Conduct" could result in discipline, including termination of employment. *Id.* at 48. Somerset

acknowledged receipt of the Associate Handbook and Code of Business Conduct at the beginning of his employment.

Somerset was aware of the significance placed on customer service and SpartanNash's policies as they applied to Dollar General and all customers, as follows:

> Q: Mr. Somerset, would you agree that it's against SpartanNash policy to repeatedly speak to a Dollar General associate in an unprofessional and aggressive tone?
>
> A: Yeah.
>
> Q: Would you agree it's against SpartanNash policy to fail to treat a customer with respect?
>
> A: Yes.

*Id*. at Ex. B, Somerset Dep. 67-68, ECF No. 19-2.

Somerset also was aware that as a driver, he had an obligation to behave professionally according to company policy, and that failure to do so could result in termination.

> Q: Do you agree that you had an obligation to behave professionally at all times when delivering to customers?
>
> A: Yes.
>
> Q: You would agree that as a driver at SpartanNash, it would have been a violation of company policy to be rude to a customer?
>
> A: Yes.

> Q: During your employment at SpartanNash, were you aware that a driver could be terminated if he treated customers poorly routinely?
>
> A: To the best of my knowledge, yes.

*Id.* at 41-42.

There were several customer complaints against Somerset during his employment. On May 3, 2013, the manager of the Dollar General store in Evansville, Indiana, called SpartanNash to report that Somerset "was really rude" and "displayed an unpleasant attitude" during that day's delivery. *Id*. at Ex. A, Hoops Decl. Ex. 1, ECF No. 19-1. The manager also reported that Somerset claimed that "this was the last time he was coming to their store." *Id.* Although a formal written warning was not given, Hoops did discuss the incident with Somerset, and he received "coaching" as indicated by a Performance Discussion Record dated May 14, 2013. *Id.* at Ex. 2.

On March 28, 2014, SpartanNash's customer service center received a complaint about Somerset from the Dollar General store in Cabot, Arkansas. The customer service agent reported that the store had advised that Somerset "got into a verbal altercation with a store associate on [sic] front of the customers . . . that got so bad another associate had to step in between then to stop them." *Id*. at Ex. D, Bevins Decl. Ex. 1, ECF No. 19-4. The store also reported that the incident was "not the first time" something like that had happened with Somerset. *Id.* As a

result of this incident, Somerset was issued a final written warning as indicated on a Performance Discussion Record dated March 31, 2014, which advised him that "any further incidents involving unprofessional or aggressive behavior toward any customer, vendor, regulatory inspector, coworker, supervisor or others, will result in further disciplinary action, up to and including termination." *Id*. at Ex. 2.

SpartanNash received another complaint from the Cabot, Arkansas, Dollar General store about Somerset's conduct on October 15, 2015 ("October 2015 Complaint") in which the store "requested a different driver." Pl.'s Mem. Opp'n Mot. Summ. J. Ex. 10, ECF No. 20-10. Hoops subsequently called the store to investigate. The store reported that Somerset had been "extremely rude and [had] no respect towards the female manager." Hoops Decl. Ex. 3, ECF No. 19-1. At that time, the store also requested that Somerset "not be sent back to [the] store." *Id*.

After conducting an investigation into the October 2015 Complaint, Hoops and Bevins provided the results of the investigation to Lance Polege, SpartanNash's Human Resources Manager. Polege then sent that information to Ed Ely, Regional Director of HR-West, and recommended that Somerset's employment be terminated. The ultimate decision to terminate was made by Ely and Sam Schwartz, Regional Director of Transportation, on October 26, 2015. According to SpartanNash, the decision was based on SpartanNash's Associate

Handbook, Code of Business Conduct, the significance of the company's relationship with Dollar General, the October 2015 Complaint, and various employment records, including the Performance Discussion Records from May 2013 and March 2014.[1]

Somerset argues that he was fired because of his race and because he complained of racial discrimination. He claims that he was denied the transfer of driving routes when he requested, while some white drivers were routinely allowed such transfers.

Following discovery, SpartanNash has moved for summary judgment in its favor, contending that Somerset is unable to prove that his termination was the product of racial discrimination or in retaliation for engaging in protected activity. The motion has been fully briefed and is ripe for decision.[2]

II.

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To raise a genuine issue of material fact

---

[1] On October 27, the day after Somerset's firing, Hoops spoke with the female manager of the Cabot store who also reported that Somerset "was very rude . . . and [she] did not want him back at [the] store." *Id.* at Ex. 4.

[2] I will dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not significantly aid the decisional process.

sufficient to avoid summary judgment, the evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In making this determination, "the court is required to view the facts and draw reasonable inferences in a light most favorable to the nonmoving party." *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994). "Mere unsupported speculation . . . is not enough to defeat a summary judgment motion." *Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 62 (4th Cir. 1995). Applying these standards, SpartanNash's Motion for Summary Judgment must be granted.

## A. Racial Discrimination Claim.

Title VII of the Civil Rights Act of 1964 ("Title VII"), among other things, prohibits employers from discriminating against employees on the basis of race. 42 U.S.C.A. § 2000e-2(a)(1). A plaintiff bringing such a claim "may avert summary judgment . . . through two avenues of proof." *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 284 (4th Cir. 2004). First, "[a] plaintiff can survive a motion for summary judgment by presenting direct or circumstantial evidence that raises a genuine issue of material fact as to whether an impermissible factor such as race motivated the employer's adverse employment decision." *Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 318 (4th Cir. 2005). In the alternative, which applies in this case, a plaintiff may make use of the proof

scheme laid out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and "proceed under a 'pretext' framework, under which the employee, after establishing a prima facie case of discrimination, demonstrates that the employer's proffered permissible reason for taking an adverse employment action is actually a pretext for discrimination." *Hill*, 354 F.3d at 285. In the absence of direct evidence, a plaintiff must first show: "(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010). In the present case, Somerset has not established that he was satisfactorily performing his job, nor has he proffered evidence that his termination constituted a difference in treatment from similar employees outside the protected class.

The overwhelming evidence establishes that SpartanNash viewed Somerset's job performance as unsatisfactory. "[T]he Fourth Circuit has concluded that inappropriate behavior and poor performance preclude a plaintiff from both establishing a prima facie case of discrimination and staving off summary judgment." *Hughes v. Navy Fed. Credit Union*, No. 1:10-CV-1430, 2012 WL 32404, at *11 (E.D. Va. Jan. 4, 2012) (citing *Morrall v. Gates*, 370 F. App'x 396, 398 (4th Cir. 2010) (unpublished) (affirming summary judgment where the plaintiff had "demonstrated disrespectful and disruptive conduct"). Somerset

offers a self-assessment of his job performance, which he deems to be satisfactory, but his personal opinion alone cannot establish a genuine issue of material fact. *See Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 960-61 (4th Cir. 1996) ("It is the perception of the decision maker which is relevant, not the self-assessment of the plaintiff.") (internal quotation marks and citation omitted). Somerset was coached on unprofessional conduct and rudeness toward his supervisors and customers on various occasions throughout his employment at SpartanNash. Because the behavior continued, he was ultimately given a final warning in 2014. Being "disrespect[ful] toward a supervisor" and "[d]iscourteous treatment of customers" are both violations of SpartanNash's Code of Conduct. Schwartz Decl. Ex. 1 at 49, ECF No. 19-5. Company policy further provides that discharge is the "action taken when an associate has failed to correct conduct" and "may occur for a single incident." *Id.* at 48.

Somerset alleges that the incidents at issue were "so minimal and trivial that [they] did not even warrant or result in a write-up," and that he "was never provided with any verbal or written counseling that his performance was deficient." Pl.'s Mem. Opp'n Mot. Summ. J. 16, 17, ECF No. 20. However, this contention is flatly contradicted by the evidence. Somerset conceded that he had received the 2014 written warning, which clearly indicates that it is a final warning for conduct and policy violations. Somerset Dep. 67, ECF No. 19-2 (Q: Okay. So

you are familiar with the – you were aware that you received a written warning on March 31, 2014?  A:  I remember it.).  In addition, he admitted that the incident in 2013 "was brought to [his] attention by management when [the customer] filed a complaint."  Pl.'s Mem. Opp'n Mot. Summ. J. Ex. 8, Somerset Decl. 3, ECF No. 20-8.

Moreover, Somerset's argument misses the point.  Regardless of the ultimate result of the incidents, i.e., whether or not there was an official write-up, it is undisputed that he was sufficiently warned of his pattern of behavior that SpartanNash considered unprofessional and unsatisfactory.  It was this record, considered in conjunction with the several customer complaints and violations of company policy, that served as the basis for his termination.

Even assuming Somerset has established that his job performance satisfied SpartanNash's legitimate expectations, which he has not, he has nonetheless failed to show that he was treated less favorably than those similarly situated employees outside of the protected class.  "[A] prima facie case of discrimination is established if the plaintiff shows that he 'engaged in prohibited conduct similar to that of a person of another race . . . and . . . that disciplinary measures enforced against the plaintiff were more severe than those enforced against the other person.'"  *Kelley v. United Parcel Serv., Inc.*, 528 F. App'x 285, 286 (4th Cir. 2013) (unpublished) (quoting *Moore v. City of Charlotte*, 754 F.2d 1100, 1105-06

(4th Cir. 1985)). Somerset contends that other drivers frequently received customer complaints without termination. However, the undisputed evidence is that two white drivers similarly received customer complaints of unprofessional conduct, one of whom was fired and the other "resigned because it would have been a terminable offense but he preferred to resign." Def.'s Mem. Supp. Mot. Summ. J. Ex. I, Hoops Dep. 52, ECF No. 19-9. Therefore, Somerset has not shown that these individuals "engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Haywood v. Locke*, 387 F. App'x 355, 359 (4th Cir. 2010) (unpublished) (internal quotation marks and citation omitted).

Furthermore, nothing in the record supports an inference that SpartanNash's basis for termination was pretextual. To the contrary, the evidence establishes that Ely and Schwartz, the decision makers, honestly believed that Somerset violated company policies and failed to meet the company's legitimate expectations. Their decision was based upon Polege's recommendation, the October 2015 Complaint, and a review of the investigation into that complaint, as well as several other documents including the Performance Discussion Records from May 2013 and March 2014. Somerset claims that Polege and Bevins harbored racial animosity,[3]

---

[3] In support of this contention, Somerset references an October 2015 telephone call with Polege in which Somerset complained that Bevins was treating him unfairly because she would not transfer him to another route. Polege explained to Somerset that

and as a result, fabricated the facts upon which Ely and Schwartz, acting as "rubber stamps," relied to make their termination decision.[4] Pl.'s Mem. Opp'n Mot. Summ. J. 26, ECF No. 20. However, the uncontested evidence establishes that Ely and Schwartz genuinely believed that Somerset deserved to be discharged. Moreover, "when an employer gives a legitimate, non-discriminatory reason for discharging the plaintiff, it is not [the court's] province to decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination." *Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 279 (4th Cir. 2000) (internal quotation marks and citation omitted). There is simply no

---

the company followed a certain procedure for allocating routes, which was "seniority based." Pl.'s Mem. Opp'n Mot. Summ. J. Ex. 1, Polege Dep. at 47, ECF No. 20-1.

[4] The Supreme Court has held cognizable the "cat's paw" theory of liability against an employer under the Uniformed Services Employment and Reemployment Rights Act ("USERRA"), recognizing both that "[a]n employer's authority to reward, punish, or dismiss is often allocated among multiple agents," *Staub v. Proctor Hosp.*, 131 S. Ct. 1186, 1192 (2011), and that "[t]he one who makes the ultimate decision does so on the basis of performance assessments by other supervisors." *Id.* at 1192-93. The Court held that "if a supervisor performs an act motivated by antimilitary animus that is *intended* by the supervisor to cause an adverse employment action, and if that act is a proximate cause of the ultimate employment action, then the employer is liable under USERRA." *Id.* at 1194 (footnote omitted). *Staub* was limited to the USERRA, and the Fourth Circuit has adopted a more stringent standard under Title VII, where the "biased subordinate" was, in effect, that actual decisionmaker. *Hill,* 354 F.3d at 289. For instance, a subordinate harboring unlawful intent may be deemed the actual decisionmaker "where the supervisor's reports and recommendation were merely rubber-stamped by the formal decisionmaking committee." *Id*. at 291. Nonetheless, under either standard, there is no evidence to support the allegation that the actions of Polege and Bevins were motivated by racial animus. Indeed, even in the email cited by Somerset in support of his contention, Polege states that a written warning should be given to Somerset based on his "disrespect for management," which is a violation of company policy. Pl.'s Mem. Opp'n Mot. Summ. J. Ex. 14, ECF No. 20-14.

evidence by which a reasonable factfinder could determine that Ely and Schwartz relied upon any basis other than the October 2015 Complaint, in conjunction with Somerset's problematic employment history. Based on these facts, summary judgment is appropriate on Somerset's discrimination claim.

## B. Retaliation Claim.

Title VII makes it an "unlawful employment practice for an employer to discriminate against any of his employees . . . because [an employee] has opposed any practice" prohibited by Title VII. 42 U.S.C.A. § 2000e-3(a).[5] When there is no direct evidence of retaliation, the plaintiff must show: (1) that he engaged in a protected activity under Title VII; (2) that his employer took adverse employment action against him; and (3) that there existed a causal connection between the protected activity and the adverse action. *See Munday v. Waste Mgmt. of N. Am., Inc.*, 126 F.3d 239, 242 (4th Cir. 1997). "The employer may then rebut the prima facie case by showing that there was a legitimate non-discriminatory reason for the adverse action, after which the burden shifts back to the plaintiff to show that those reasons are pretextual." *Id*. (internal citations omitted).

---

[5] The failure of Somerset's discrimination claim does not necessarily foreclose his claim of retaliatory discharge. *Ross v. Commcn's Satellite Corp.*, 759 F.2d 355, 357 n.1 (4th Cir. 1985). Overruled on other grounds, Price Waterhouse v. Hopkins, 490 U.S. 228 (1989). ("An underlying discrimination charge need not be meritorious for a plaintiff to prevail on a claim of retaliation for opposition to the perceived discrimination.").

"Protected activities fall into two distinct categories: participation or opposition. An employer may not retaliate against an employee for participating in an ongoing investigation or proceeding under Title VII, nor may the employer take adverse employment action against an employee for opposing discriminatory practices in the workplace." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 259 (4th Cir. 1998) (internal citation omitted). Somerset claims that he engaged in protected activity when he opposed racial discrimination at SpartanNash by allegedly reporting to Polege incidents of unfair treatment and discrimination by Bevins.

The only evidence Somerset has presented in this regard is the October 2015 telephone call with Polege, which I previously addressed. Somerset alleges that during this call he reported to Polege that Bevins was discriminating against him and treating him unfairly because she would not transfer him to another route. Polege explained to Somerset that the company followed a certain procedure for allocating routes, which was "seniority based."[6] Polege Dep. 47, ECF No. 20-1. Unsatisfied with this response, Somerset alleges that "Polege was generally dismissive of the issue," which prompted Somerset to threaten to "take [the] issue

---

[6] Even assuming that Somerset did, in fact, request to transfer routes, there is no evidence to support his contention that Bevins' failure to do so was racially motivated. It is undisputed that routing decisions were based on seniority at the time of Somerset's employment. Moreover, it is also undisputed that on multiple occasions and at the request of Somerset, Bevins gave him additional routes in order to help alleviate some financial difficulties he was having.

to HR corporate." *Id.* at Ex. 8, Somerset Decl. 5, ECF No. 20-8. However, there is no evidence that Somerset ever did contact HR corporate.

Even if Somerset could show that he had engaged in a protected activity, he has not put forth sufficient evidence to show a causal connection between it and his termination. In an attempt to demonstrate a causal connection between his complaint to Polege and his termination, Somerset points to the temporal proximity between the telephone call and his termination. While evidence of temporal proximity "far from conclusively establishes the requisite causal connection, it certainly satisfies the less onerous burden of making a prima facie case of causality." *Williams v. Cerberonics, Inc.*, 871 F.2d 452, 457 (4th Cir. 1989). However, the Supreme Court has held that a Title VII plaintiff claiming retaliation must establish that the "protected activity was a but-for cause of the alleged adverse action by the employer . . . which is more demanding than the motivating-factor standard." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013). Somerset cannot meet this demanding standard. He has provided no evidence to support an inference that Polege, Hoops, Ely or Schwartz did not believe that the October 2015 Complaint had been filed against him for unprofessional conduct or that he had been coached in the past for similar violations of company policy. His argument that his termination occurred in close proximity to his phone call with Polege is simply not enough.

Additionally, Somerset's retaliation claim fails because the record does not demonstrate that SpartanNash's legitimate, nonretaliatory reason for terminating his employment was pretextual. Somerset attempts to discredit the investigation into the October 2015 Complaint and Ely and Schwartz's reliance on it, with conclusory allegations of racial animus, but, as discussed above, the evidence in the record overwhelmingly indicates that both supervisors honestly believed that Somerset had violated company policy and damaged valuable customer relations. *See Walker v. Mod-U-Kraf Homes, LLC*. 988 F. Supp. 2d 589, 602 (W.D. Va. 2013) ("While Walker may disagree with the outcome of the investigation, she has failed to raise a triable issue of fact as to whether Adkins and McDaniel honestly believed that Walker deserved to be discharged for her involvement in the altercation.").

Somerset also attempts to demonstrate that the explanation given by SpartanNash for his termination was pretextual by arguing that this defense has been "migrating and manufactured." Pl.'s Mem. Opp'n Mot. Summ. J. 21, ECF No. 20. He contends that SpartanNash changed its position with respect to who made the final decision to terminate and failed to identify these individuals in its first set of interrogatories. I do not find this argument persuasive. "Once an employer has provided a non-discriminatory explanation for its decision, the plaintiff cannot seek to expose that rationale as pretextual by focusing on minor

discrepancies that do not cast doubt on the explanation's validity, or by raising points that are wholly irrelevant to it. The former [does] not create a genuine dispute, the latter . . . fail[s] to be material." *Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 216 (4th Cir. 2007) (internal quotation marks and citation omitted). Although Somerset disagrees, the record demonstrates that he was terminated for violations of company policy and customer complaints. This rationale has never changed, although precisely who made the decision may have. In this case the reason for termination is far more important than who made it, especially since SpartanNash never claimed that Bevins, the *only* employee that Somerset has alleged discriminated against him, made the decision to terminate or ever recommended termination. Additionally, while it is true that Polege recommended to Ely that Somerset be terminated, there is simply no evidence in the record showing that this recommendation was based on racial animus or anything other than Somerset's attitude and behavior.

For all of these reasons, summary judgment is also appropriate on Somerset's retaliation claim.

III.

For the reasons stated, it is **ORDERED** that Defendant's Motion for Summary Judgment (ECF No. 18) is GRANTED. A separate final judgment will be entered in favor of the defendant.

ENTER: April 17, 2018

/s/ James P. Jones
United States District Judge